UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.  2:25-cv-10581-MWC-PD | Date: November 10, 2025 |
| Title:  Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.* | |

Present: The Honorable **Michelle Williams Court, United States District Judge**

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: Order GRANTING IN PART and DENYING IN PART Petitioner's *Ex Parte* Application for Temporary Restraining Order (Dkt. 4).**

Before the Court is Petitioner Francisco Carrillo Garcia's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") and preliminary injunction enjoining Respondents Ernesto Santacruz Jr., Todd Lyons, Kristi Noem, Pamela Bondi, and Fereti Semaia (collectively, "Respondents")[1] from (1) continuing to detain him unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the TRO, where the government must prove by clear and convincing evidence that Petitioner is a danger to the community and a flight risk such that physical custody is required, and (2) prohibiting Respondents from relocating Petitioner outside of the Central District pending final resolution of this case. Dkt. # 4 ("*App.*") i, 5. The Government opposed the Application ("Opposition"). *See* Dkt. # 6 ("*Opp.*").[2]  For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** the Application.

---

[1] Ernesto Santacruz Jr. is the acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division.  Todd Lyons is the Acting Director of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security ("DHS").  Kristi Noem is the Secretary of the DHS.  Pamela Bondi is the Attorney General of the United States. Fereti Semaia is the Warden of the Adelanto ICE Processing Center, Adelanto, California, where Petitioner is detained.  *See* Dkt. # 1 ("*Pet.*") ¶¶ 20–24.

[2] Petitioners subsequently filed a Reply.  Dkt. # 7.  This Court's Rules do not permit reply briefs on *ex parte* applications. See Hon. Michelle Williams Court Standing Order ¶ 11,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 2:25-cv-10581-MWC-PD                                                              Date: November 10, 2025

Title:     Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

I.     Background

    A.     Factual Background

Petitioner is a citizen and national of El Salvador who entered the U.S. in 2014 at the age of 24. Dkt. # 4-1 ("*Duran Decl.*") ¶ 4, Ex. A. DHS incarcerated Petitioner as he began pursuing an asylum claim. *Id.* ¶ 8. After 30 days of incarceration, DHS determined that Petitioner established a credible fear of persecution. *Id.* ¶ 8, Ex. B. Petitioner was released pursuant to Immigration and Nationality Act Section 236 (codified at 8 U.S.C. § 1226(a)), upon posting an $8,000 bond. *Id.* ¶¶ 5, 6, Ex. A. A release under Section 236 required a finding that Petitioner was neither a danger to the community nor a flight risk. *Id.* ¶ 5. No further check-ins or other monitoring was required. *Id.* ¶ 6. Since his release on bond from DHS custody in August of 2014, Petitioner has complied with the terms of his bond order and all reporting requirements imposed by DHS. *Id.* ¶ 7. In 2017, Petitioner married a U.S. citizen. *Id.* ¶ 9. The couple have four U.S. citizen children, the youngest of whom has severe autism. *Id.* ¶¶ 19–20, Exs. J, K. Petitioner is the sole provider for his family of six. *Id.* ¶ 19.

For the past eleven years, Petitioner has diligently pursued an application for relief from removal. *Id.* ¶ 8. On or about November 1, 2018, Petitioner's prior counsel withdrew Petitioner's asylum application to pursue consular processing for permanent residency instead. *Id.* ¶¶ 10–11. This strategy required filing with USCIS an I-601A provisional waiver of Petitioner's unlawful presence. *Id.* ¶ 9. On December 31, 2019, Petitioner filed an application for the provisional waiver. *Id.* ¶ 11. However, because the waiver was filed prior to the administrative closure of Petitioner's removal proceedings on March 25, 2022, the waiver application was denied. *Id.* ¶ 11, Ex. D. Thus, Petitioner's case removal proceedings remain pending. *Id.* ¶ 15.

On December 15, 2023, Petitioner was arrested for an alleged hit-and-run collision involving injury. *Id.* ¶ 13. A misdemeanor was filed on October 1, 2024. *Id.* Petitioner pled not guilty and was released on his own recognizance. *Id.* A further pre-trial hearing has been scheduled for January 20, 2026. *Id.* Petitioner's public defender, Mr. Harrison

---

https://apps.cacd.uscourts.gov/Jps/honorable-michelle-williams-court. Accordingly, the Court declines to consider Petitioners' Reply in deciding the Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                                              Date: November 10, 2025

Title:       Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

Sell, believes the case is likely to be resolved through civil compensation and dismissal. *Id.* ¶ 14, Ex. G.

In early May, 2025, Petitioner received a notice from ICE to appear for an interview in San Bernardino. *Id.* ¶ 15. On or around May 15, 2025, Petitioner appeared as requested and was re-detained and advised that his time in the U.S. had "come to an end." *Id.* Pursuant to 8 C.F.R. § 236.1(c)(9), the Petitioner's arrest automatically revoked his previous $8,000 bond.

Petitioner's counsel scheduled a bond redetermination hearing for September 10, 2025. *Id.* ¶ 17. At a pre-hearing conference, the Immigration Judge indicated that he did not have jurisdiction to determine Petitioner's request pursuant to *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025), which held, "based on the plain language of section 235(b)(2)(A) of the INA, 8 U.S.C. §1225(b)(2)(A)(2018) Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id.* Petitioner withdrew the request without prejudice, and his individual hearing was subsequently reset for December 24, 2025. *Id.* ¶ 17, Ex. I.

B.    Procedural Background

On November 4, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") in this court on the grounds that his detention deprives him of due process protections under the Fourth and Fifth Amendments of the Constitution, and that Respondents' arrest and detention of Petitioner was arbitrary and capricious in violation of the Administrative Procedure Act.

In this Application, Petitioner seeks a TRO and preliminary injunction ordering Respondents to release him from unlawful detention unless he is afforded a hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) on whether a change in bond amount or revocation of his bond is justified by clear and convincing evidence that he is a danger to the community or a flight risk within seven days of the TRO. *App.* 20. Petitioner also seeks an order prohibiting Respondents from relocating Petitioner outside of the Central District pending final resolution of this litigation. *Id.* 5.

Respondents oppose Petitioner's Application on several grounds. They argue that Petitioner fails to meet the high bar for injunctive relief because the Court lacks jurisdiction under 8 U.S.C. § 1252; Petitioner is lawfully detained pending the resolution of his removal

proceedings; that legislative history does not suggest Congressional intent to treat individuals who entered the country unlawfully better than those who appear at a port of entry; and that prior agency practices are not entitled to deference. *See generally Opp.* Respondents note, should the Court disagree with Respondents' arguments, "relief should be limited to what other Judges in this District have generally issued in similar cases: Requiring release unless a Section 1226(a) bond hearing is provided within seven (7) days." *Opp.* 15.

II.    Legal Standard

   A.    *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

   B.    Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:25-cv-10581-MWC-PD | Date: November 10, 2025 |
| Title: Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.* | |

*Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.    Discussion

    A.    *Ex Parte* Application and *Mission Power* Factors

The Court finds Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since May, and has not had his bond redetermination request adjudicated since September. *Duran Decl.* ¶¶ 15, 17. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days.

Respondents argue that Petitioner has not established his request meets the high bar for emergency relief, in part because he delayed in filing the request. *Opp.* 3 ("Petitioner filed the ex parte Application over five months after he was arrested."). Because the injury of continued detention is ongoing, the Court finds Plaintiff did not unduly delay in seeking relief. *See infra* Section III.C.ii; *see Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *2 (C.D. Cal. Sept. 8, 2025) ("The Court finds that petitioners' *ex parte* request for relief is appropriate because petitioners allege that their continued detention without bond hearings, which they would be entitled to under 8 U.S.C. 1226(a), constitutes irreparable injury." (citation omitted)).

Respondents also argue Petitioner has not demonstrated sufficiently urgent circumstances warranting a TRO: "While he may have U.S. citizen family members who rely on him for support, including a child who has autism, he has not established that this constitutes an emergency." *Opp.* 3. The argument is not persuasive. For six months,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                                  Date: November 10, 2025

Title:       Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

Petitioner has been unable to work and support his family, including a young son with autism whose progress has been adversely affected without Petitioner. *Id.* ¶¶ 19–20. Further delay also leaves Petitioner in the poor conditions characteristic of ICE detention. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (identifying "the subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees who parents are detained."). For these reasons, the Court finds *ex parte* relief warranted.

      B.    <u>Jurisdiction</u>

Before turning to the *Winter* factors, the Court addresses Respondents' contention that the Court lacks jurisdiction to adjudicate the TRO under 8 U.S.C. § 1252. *Opp.* 5–9. In laying out their argument, Respondents point to two provisions in that statute: § 1252(b)(9) and § 1252(g).

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

In interpreting the statute, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) is instructive. The Supreme Court determined that the "arising from" language of § 1252(b)(9) does not mean that the provision covers every action that technically follows the commencement of removal proceedings, as that would bar judicial review of questions of law and fact that are unrelated to the removal proceeding until there was a final order of removal. *Jennings*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-cv-10581-MWC-PD | Date: November 10, 2025 |
| Title:   Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.* | |

583 U.S. at 292–95. Like the class in *Jennings*, Petitioner here is "not asking for review of an order of removal," nor is he "challenging the decision to detain [him] in the first place or to seek removal," and he is not "challenging any part of the process by which [his] removability will be determined." *Id.* at 294. Instead, Petitioner challenges his detention without being afforded a bond hearing. *App.* 4. "Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 582 U.S. at 294–95 (footnote omitted). Thus, the Court has jurisdiction to rule on the TRO.

Respondents also cite § 1252(g) to support their argument that the Court lacks jurisdiction to rule on the TRO. That section reads:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter*.

8 U.S.C. § 1252(g) (emphasis added). Respondents argue, "[h]ere, Petitioner challenges the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings, and is thus an 'action taken . . . to remove them from the United States.'" *Opp.* 8 (quoting 8 U.S.C. § 1252(b)(9)) (brackets omitted). But the reasoning discussed with respect to § 1252(b)(9) applies with equal force to § 1252(g). *See Jennings*, 583, U.S. at 294 ("We did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Since Petitioner's mandatory detention and bond denial claim does not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not present a jurisdictional bar to judicial review. *See Mosqueda*, 2025 WL 2591530, at *3; *Henberto Arreola Armenta v. Noem*, No. 5:25-cv-02416-JFW-SP (C.D. Cal. Sept. 16, 2025), Dkt. # 7, 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                                Date: November 10, 2025

Title:   Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

    C.    <u>Request for Release from Detention Unless Bond Hearing Provided in Seven Days</u>

The Court finds that Petitioner is entitled to a TRO enjoining Respondents from continuing to detain him unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the TRO.

    *i.*    *Likelihood of Success on the Merits*

Petitioner argues that he is likely to succeed on the merits of his Petition because the Due Process Clause of the Constitution makes it unlawful for Respondents to have re-arrested him without first providing a pre-deprivation hearing before a neutral decisionmaker to determine whether circumstances had materially changed since his release on bond in August of 2014, such that detention would now be warranted on the basis that he is a danger or a flight risk by clear and convincing evidence. *See App.* 6–17. The Court agrees.[3]

    *a.*    *Immigration Judges may hear bond redetermination requests*

As a preliminary matter, Respondents argue that Plaintiff cannot succeed on the merits of his Petition because § 1225(b)(2)(A) governs Petitioner's detention, which strips Immigration Judges of the authority to hear bond requests or to grant bond based on the plain language of the statute and the reasoning in *Matter of Jonathan Javier Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Opp.* 1, 2, 10–12.

The Court has rejected this argument on several occasions. *See, e.g.*, *R.S. v. Santacruz*, No. 5:25-cv-02594-MWC-SK, Dkt. # 7, 4–6; *Ortiz v. Lyons*, No. 2:25-cv-09831-MWC-KES, Dkt. # 7, 4–6. The same is true of many other district courts. *See, e.g.*, *Valencia Zapata*, 2025 WL 2741654, at *8–10; *Rodriguez v. Bostock*, No. 3:25-cv-05240-

---

[3] Given the Court's conclusion that Petitioner has demonstrated he is likely to succeed on the merits of his due process claim, the Court declines to analyze Petitioner's likelihood of success on his remaining two claims: unreasonable seizure under the Fourth Amendment and violation of the APA. *See Fernandes v. Nationstar Mortg. LLC*, No. 2:24-CV-01946-DAD-JDP, 2024 WL 3470805, at *4 n.3 (E.D. Cal. July 19, 2024) (in granting ex parte application, declining to analyze likelihood of success as to remaining claims).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-10581-MWC-PD          Date: November 10, 2025

Title:    Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

TMC, 2025 WL 2782499, at *1–3 ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). The Court reaches the same conclusion as in previous cases—8 U.S.C. § 1226(a) controls, not § 1225. As such, Respondents' detention of Petitioner was discretionary, not mandatory, and an immigration judge may hear Petitioner's bond redetermination request.

The Court proceeds to the merits of Petitioner's due process claim.

         b.       *Procedural Due Process*

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. That interest is particularly weighty when government detention is at issue. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release, since courts have repeatedly recognized that conditional release from physical restraint gives rise to a protected liberty interest. *See generally Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150–53 (1997) (applying *Morrissey* pre-parole). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

These due process rights apply to noncitizens residing in the United States. The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation omitted)). Once a noncitizen is present in the United States, they have a "weighty" liberty interest in remaining in the United States, as they stand to lose rights to "stay and live and work" in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:25-cv-10581-MWC-PD                                    Date: November 10, 2025

Title:  Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

the country and "to rejoin [their] immediate family." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation omitted). That weighty liberty interest remains "regardless of how someone entered the country: '[O]nce passed through our gates, even illegally,' noncitizens 'may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Accordingly, as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *see also Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021) (holding a Mexican citizen with pending removal proceedings who had been released on bond had "a substantial private interest in remaining on bond" (citation omitted)).

### 1.  Applicability of Mathews v. Eldrige

After determining that due process applies, the outstanding question is "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). When determining what procedures are required by due process, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

### 2.  Private Interest at Stake

Petitioner gained a liberty interest in his continued freedom when DHS elected to release him on bond in 2014 pursuant to INA section 236 (8 U.S.C. § 1226). *Duran Decl.* ¶¶ 4–6, Ex. A. This implied a promise that he would not be re-detained so long as he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                        Date: November 10, 2025

Title:     Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

abided by the terms of his release. *See Salcedo Aceros*, 2025 WL 2637503, at *7; *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025). Under federal regulations, DHS's decisions to release Petitioner necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Here, Petitioner has abided by the terms of his release and complied with all reporting requirements imposed by DHS and ICE. *Duran Decl.* ¶¶ 7, 15. Respondents suggest there was nonetheless a change in circumstances, because Petitioner was charged on October 1, 2024 with a hit and run resulting in injury. *Opp.* 3. Respondents do not provide further argument, case law or statutes as to why a misdemeanor charge would render ICE's revocation of release on bond proper. *See id.* Nor do Respondents address Petitioner's arguments that a misdemeanor does not trigger mandatory detention, and that the criminal case is likely to be dismissed. *See Duran Decl.* ¶ 14, Ex. G. For these reasons, the Court finds insufficient indication that circumstances have materially changed. The government's decision to release Petitioner for 11 years following his initial detention gave him a protected interest in his continued liberty. *Calderon*, 2025 WL 2430609, at *3; *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025). Respondents "cannot now about-face and extinguish these liberty interests by pursuing mandatory detention against Petitioner[]." *Valencia Zapata*, 2025 WL 2741654, at *9.

Accordingly, the Court finds Petitioner has a significant private interest in his continued liberty, and thus the first *Mathews* factor favors Petitioner.

### 3. Risk of Erroneous Deprivation

The Court concludes that the second *Mathews* factor also favors Petitioner. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). As described above, *see supra* Section III.C.i.b.2, Petitioner was released on bond after his initial detention. By releasing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                              Date: November 10, 2025

Title:     Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

Petitioner, immigration officers necessarily determined that he was neither a flight risk nor danger to the community. And in the intervening years, there has been little to no indication that Petitioner has become a flight risk or danger to the community. Nonetheless, Respondents have adopted the position that noncitizens have no entitlement to a bond hearing under § 1225(b)(2) and that Immigration Judges lack jurisdiction to hold such a hearing under *Yajure Hurtado*. *See Opp.* 1, 2, 10–12. Accordingly, absent an order requiring an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a), the risk of erroneous deprivation of liberty is high given the possibility that Petitioner's detention is not pursuant to a valid state interest. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025).

       4.  *Respondents' Interest*

This Court joins others in concluding that Respondents' interest in keeping Petitioner detained without opportunity for an individualized bond hearing is low "because ICE previously made the determination to release him, and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination." *See Aviles-Mena*, 2025 WL 2578215, at *6; *Valencia Zapata*, 2025 WL 2741654, at *11. Furthermore, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Becerra*, 2025 WL 691664, at *6).

Because all three *Mathews* factors favor Petitioner, the Court concludes that Petitioner has demonstrated, at the very least, a serious question going to the merits of his procedural due process claim.

       c.  *Substantive Due Process*

Petitioner has also shown serious questions going to the merits of his claim as to substantive due process. As described above, freedom from government custody "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. For that reason, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). In the context of civil immigration detention, the two "regulatory goals" of the Immigration and Nationality Act provisions governing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:25-cv-10581-MWC-PD | Date: November 10, 2025 |
| Title: Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.* | |

such detention—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide such "special justification." *Id.* (citations omitted); *see also Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger to the community." (citing *Zadvydas*, 533 U.S. at 690)). Although "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," *Hernandez*, 872 F.3d at 990, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions," *id.* at 994. Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Here, Petitioner was released on bond upon a finding that he was neither a flight risk nor a danger to the community. *Duran Decl.* ¶ 5. As such, the justifications for civil immigration detention were absent from his case. *See Valencia Zapata*, 2025 WL 2741654, at *12. Respondents do not meaningfully dispute Petitioner's contention that his sole criminal charge, a misdemeanor, does not trigger mandatory detention. Conversely, Petitioner has complied with all requirements applicable to his immigration proceedings. *Duran Decl.* ¶¶ 7, 15. Thus, continuing to detain Petitioner without an individualized bond hearing would lack a valid basis and violate Petitioner's right to be free from impermissible government custody. *See Zadvydas*, 533 U.S. at 690; *see also Gamez Lira v. Noem*, No. 25-cv-00855-WJ-KK, 2025 WL 2581710, at *2–3 (D.N.M. Sept. 5, 2025) (finding the noncitizen petitioner was likely to succeed on a substantive due process claim in connection with his immigration detention because the evidence showed he was not a flight risk). Accordingly, Petitioner has demonstrated at least a serious question as to whether his detention violates his substantive due process rights by failing to serve any valid purpose.

    *ii.*    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty without the bond hearing that he is entitled to under § 1226(a). *See Hernandez v. Sessions*, 872 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10581-MWC-PD                                    Date: November 10, 2025

Title:     Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.*

976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention). Accordingly, this factor weighs in favor of granting the TRO.

       *iii.*    *Balance of Equities and Public Interest*

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As Respondents assert, there is a compelling interest in the enforcement of the nation's immigration laws. *Opp.* 14–15; *see Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Nonetheless, the balance of equities and the public interest factors favors Petitioner, because he is challenging a policy that is likely in violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law.") (citations omitted); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M.F.*, 2021 WL 783561, at *3 (cleaned up).

Even if Respondents later prove Petitioner's detention is necessary to prevent flight or danger to the community, the only adverse consequence Respondents face if the Court grants the TRO is a "short delay" in detaining Petitioner. *Salcedo Aceros*, 2025 WL 2637503, at *14. As such, the balance of equities tip in Petitioner's favor.

Because "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:25-cv-10581-MWC-PD | Date: November 10, 2025 |
| Title: Francisco Carrillo Garcia v. Ernesto Santacruz Jr. *et al.* | |

    D.    <u>Request to Enjoin Petitioner's Relocation</u>

    Petitioner requests a TRO prohibiting Respondents from relocating Petitioner outside of the Central District pending final resolution of this litigation. *See App.* 5:17–18. However, the Application does not include any further argument or mention of the issue, and Petitioner does not explain why an emergency order is required to prevent his relocation. Given the high bar to demonstrate a need for emergency relief, without more, the request is **DENIED**.

IV.    <u>Conclusion</u>

    For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Application. The Court **ORDERS** Respondents to effectuate Petitioner's immediate release unless Petitioner is afforded an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) that takes place within seven days of the issuance of this TRO. A preliminary injunction hearing is set for **November 21, 2025**, at 1:30 p.m. in Courtroom 6A. Petitioner shall file his opening brief and all related submissions no later than close of business on November 17, 2025. Respondents shall file their opposition no later than 12 p.m. on November 19, 2025. Petitioner shall file his reply brief no later than 12 p.m. on November 20, 2025.

    **IT IS SO ORDERED.**

| | : |
|---|---|
| **Initials of Preparer** | TJ |